Filed 4/26/13  P. v. Brown CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B236407 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA068285) |
| v. | |
| WARREN EARNEST BROWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Pat Connolly, Judge.  Affirmed.

David Reis Mishook, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Eric E. Reynolds and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Warren Earnest Brown pled no contest to one count of assault on a peace officer in violation of Penal Code section 245, subdivision (c),[1] in case number YA068285. The trial court imposed and stayed a four-year prison term, and placed appellant on formal probation. Two years later, appellant was arrested and charged with three counts of battery with injury on a peace officer in violation of section 243, subdivision (c)(2) and three counts of resisting an executive officer in violation of section 69, in case number TA112635. The trial court found appellant in violation of his probation in case number YA068285, revoked that probation and imposed the previously stayed term of four years in state prison. Case number TA112635 was dismissed.

Appellant appeals from the order revoking probation. (§ 1237, subd. (b).) He contends that the trial court erred in failing to declare a doubt as to appellant's competence sua sponte. We affirm the trial court's order.

### Underlying criminal charges and probation violation

1. Case number YA068285

On May 18, 2007, Los Angeles County Sheriff's Deputies observed appellant enter and leave a residence known for narcotics sales. The deputies learned that appellant had three outstanding arrest warrants, and approached him to take him into custody. A struggle ensued. Other deputies came to the scene and used a Taser to subdue appellant. Appellant was found to have rock cocaine and marijuana. Appellant was charged with assault on a peace officer or firefighter, battery on a peace officer or firefighter, resisting an executive officer and possession of a controlled substance. On February 25, 2008, appellant pled guilty to one count of assault on a peace officer or firefighter. He was placed on probation.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2. Case number TA112635

On June 3, 2010, Los Angeles Police Officers James Williams and Juan Oliva were on patrol on West Manchester when they noticed appellant standing in front of a gas station. Officer Williams had previously arrested appellant for trespassing at the gas station and had advised him not to return there. The two officers got out of their patrol car, approached appellant and told him that he was under arrest. Appellant told the officers that they could not arrest him because he was in the military. More officers came to the scene. Officer Clinton Harrell tried to arrest appellant, and appellant punched him in his face. The blow resulted in a cut and a black eye. Officers Williams and Oliva then attempted to arrest appellant. Appellant struggled, but was subdued. Officer Williams's hand was scraped and Officer Oliva's neck got an abrasion during the struggle.

Ultimately, this matter proceeded as a probation violation. Appellant was found in violation of his probation in case number YA068285. On September 6, 2011, the trial court sentenced appellant to four years in state prison.


Appellant's competency history

The information in case number YA068285 was filed on July 3, 2007. On July 17, 2007, the trial court granted a defense motion to have a psychiatrist examine appellant. On October 17, 2007, the trial court declared a doubt as to appellant's mental competence pursuant to section 1368. In November 2007, both the People's appointed expert (Dr. Kaushal K. Sharma) and appellant's appointed expert filed reports concluding that appellant was malingering and was competent to stand trial. On November 27, 2007, the trial court found appellant competent to stand trial. On February 25, 2008, appellant pled no contest in this case, and received probation.

The information in case number TA112635 was filed on June 7, 2010. At that time, appellant was represented by Russell Griffith, a deputy public defender. That same day, counsel declared a doubt as to appellant's competency to stand trial. The trial court

3

(Judge Joel M. Wallenstein) suspended proceedings and referred appellant to Department 95.[2]

The matter became case number ZM016275 in the mental health court. Appellant was evaluated by Dr. Sharma. In his July 12, 2010 report, Dr. Sharma stated that appellant's presentation was "consistent with a person who is mentally ill and is incompetent to stand trial." Dr. Sharma recommended a hospital commitment and involuntary medication. The mental health court found appellant mentally incompetent, ordered him committed to Patton State Hospital and authorized involuntary treatment with medication.

On December 20, 2010, the mental health court held a hearing and determined that appellant was mentally competent. Criminal proceedings were reinstated. Appellant was represented at the hearing by Julia Leeds, a deputy public defender. On December 21, 2010, the trial court (Judge Wallenstein) granted appellant's request for self-representation.

At some point between December 21, 2010 and January 5, 2011, appellant sent a document to the court. The document is not part of the record on appeal. The document was discussed at the hearing held by the trial court (Judge Gary Hahn) on January 5, 2011. At the beginning of that hearing, the court stated that it had had Albert De Blanc, the Indigent Criminal Defense Appointments ("ICDA") attorney, talk to appellant. Mr. De Blanc confirmed to the court that appellant was "still talking about military service," and saying that there were "secret records" and that "they" took guns from him. The court stated, "That's the same thing he says in this document." The court declared a doubt as to appellant's competency. Mr. De Blanc shared the trial court's doubt. The court noted, "Reading what [appellant] filed actually, within this, he did ask for a legal attorney in here." The court appointed ICDA to represent appellant. The matter was certified to the mental health court in case number ZM017077. Dr. Sharma evaluated appellant and

---

[2] The minute order for this date states that the court declared a doubt and defense counsel concurred.

concluded that he was mentally competent. On February 7, 2011, the mental health court found that appellant was mentally competent. Criminal proceedings were reinstated.

On February 8, 2011, the trial court granted appellant's motion for self-representation. On February 16, 2011, the trial court revoked appellant's pro. per. status.

On March 15, 2011, a hearing on appellant's motion to dismiss was held in case number TA112635. Appellant was represented at this hearing by Jason K. Feldman. Mr. Feldman stated that the hearing was being held pursuant to section 1368.1, and the trial court (Judge Hahn) agreed. That section permits a limited number of proceedings to take place pending a competency hearing. There is nothing in the record which indicates that a competency proceeding was pending, and so the reason for invoking section 1368.1 is not clear. At the conclusion of the hearing, the court stated that the matter was referred to Department P for arraignment on March 29th.

On March 29, 2011, appellant was arraigned in the trial court (Judge Pat Connolly). He was still represented by Mr. Feldman.

On June 15, 2011, Mr. Feldman filed a motion for appointment of a mental health expert. In the motion, he wrote: "Based upon police reports provided on or about June 13, 2011, 'Mr. Brown made spontaneous statements which indicated he was suffering from a mental illness.' According to these reports, on the date and time in question, the defendant believed he was an agent of the government working on authority of the White House overseeing the building of a military base at the location. This calls into question the defendant's ability to stand trial. This further necessitates a mental health evaluation to assist the trier of fact in determining whether the defendant possessed the requisite mental state to commit the alleged crimes."[3]

On June 16, 2011, the trial court (Judge Pat Connolly) held a hearing on appellant's motion for a mental health expert. At the hearing, the court noted that "in the motion itself, Mr. Feldman has written that based on statements by Mr. Brown at the time, that Mr. Feldman is relying on an evaluation done by police officers, or peace

_____

[3] On our own motion, we augment the record with the written motion.

5

officers, which the court finds of dubious quality. But it also states here that this calls into question the defendant's ability to stand trial. [¶] I completely disagree with you, Mr. Feldman, as far as that point in this motion. We've had an evaluation done, and Mr. Brown has been sent back, and he is most definitely competent to stand trial." The court then continued: "It also says here this further necessitates a further health evaluation to assist the trier of fact to determine whether or not the defendant possesses the recognition to commit said crimes." The court agreed that "[a]long those lines, as well as perhaps their defense, which I think is along those lines, . . . for that purpose, I do think that this is a well taken motion."

There were no further competency hearings. The court held a probation violation hearing on August 26, 2011, and found appellant in violation of his probation.

Discussion

Appellant contends that "throughout his appearances on the underlying criminal charges and trailing probationary matter, and both before and after appellant was allowed to proceed *pro per*, [he] exhibited bizarre and paranoid beliefs which were substantial evidence before the trial court of appellant's incompetency to stand trial under Penal Code section 1367. This behavior required the trial court, *sua sponte*, to declare a doubt as to appellant's competency and hold appropriate competency hearings."

As appellant acknowledges, and is set forth, *ante*, doubt was declared at least twice in this matter. Both times, proceedings were suspended until appellant was found competent. "'When a competency hearing has already been held and defendant has been found competent to stand trial, . . . a trial court need not suspend proceedings to conduct a second competency hearing unless it "is presented with a substantial change of circumstances or with new evidence" casting a serious doubt on the validity of that finding. [Citations.]'" (*People v. Kelly* (1992) 1 Cal.4th 495, 542–543; *People v. Taylor* (2009) 47 Cal.4th 850, 864.)

6

Appellant was found competent in December 2010 and again in February 2011. He has not shown a substantial change in circumstances or new evidence that casts a serious doubt on the validity of the February 2011 competency finding.

The February competency determination arose from a hearing on January 5, 2011. The following exchange took place between the trial court and Albert De Blanc, the ICDA attorney.

"The Court:  [¶] . . . [¶] I had Mr. De Blanc, the ICDA attorney, go back and talk to [appellant].  He said he is still talking about military service.

"Mr. De Blanc:  There are secret records.  They took guns from him.

"The Court:  He is still talking about it.  That's the same things he says in this document. [¶] So I'm going to suspend proceedings.  He is incompetent. [¶] Read what he wrote.  Read what he told Mr. De Blanc.

[¶] . . . [¶]

"The Court:  [¶] . . . [¶] He cannot cooperate with an attorney, doesn't know what happened.  He had no idea.  He is not being charged with robbery."

Mr. De Blanc then asked if appellant was still representing himself.

"The Court:  I will be glad to appoint [an attorney]. [¶] Reading what he filed actually, within this, he did ask for a legal attorney in here.

"Mr. De Blanc:  I asked him about that.  Of course he only wants a lawyer if the lawyer can get his secret file. [¶] I said, 'What if the lawyer can't get your secret file?' [¶] He says, 'Then I'm representing myself.'"

As part of the subsequent competency proceedings, appellant was evaluated by Dr. Sharma.  The record shows that Dr. Sharma had evaluated appellant on at least two prior occasions, and so was familiar with appellant.  He was one of the doctors who found appellant incompetent in June 2010.  In his February 7, 2011 report, Dr. Sharma wrote: "Under sec. 1372 PC in Dec. 2010, [appellant] was found to have his competency restored and sent back to Compton court.  He was apparently in pro-per.  Since Dec. 2010 he is refusing his medication Zyprexa.  Today he is not demonstrating psychotic symptoms.  He is aware of his legal predicament.  Without medication he may

7

decompensate but at this time he is symptom free and thus must be considered competent."

Appellant's statements after this competency finding are the same as those identified at the January 5 hearing. At the March 15, 2011 hearing on appellant's motion to dismiss, for example, appellant said, "I'm an active duty military federal agent." In a March 29, 2011 letter to the court requesting pro. per. status, appellant again described himself as an active duty federal military agent. In an April 13, 2011 letter to the court requesting a change of venue, appellant again referred to himself as an active duty federal military agent, and referred to secret records, United Nations personnel, bloodlines and being activated for war, among other things. Appellant made similar statements at hearings held on May 4, June 1 and June 16, 2011. The issue of appellant's competency was raised by appellant's counsel at the June 16 hearing, but counsel based his concerns on statements made by appellant more than a year earlier, at the time of his arrest. And, as the trial court pointed out, there had been a competency hearing in the interval. In fact, there had been two.

These statements do not represent a change of circumstances or new evidence calling the competency finding into question. To the extent that appellant relies on the passage of time, coupled with Dr. Sharma's February statement that appellant might decompensate without his medication, to show a changed circumstance, that reliance is misplaced. Appellant had been refusing his medicine for over two months at the time Dr. Sharma evaluated him, and was competent at that time. Thus, decompensation was in no way predictable or inevitable.

Appellant's mental state was examined in some detail by the trial court at the July 14, 2011 hearing on appellant's successful *Faretta* motion. At this hearing, appellant again asserted that he was a federal agent and again made various related claims. The court stated that it did "have a concern as to [appellant's] being on active duty and stating that as his employment experience starting on November 27th of 2009, by a Supreme Court ruling." The court found, however, that appellant "has answered every question and he's done so previously. He does understand the nature of the adversarial

8

proceedings that is going to be this criminal trial. He does understand the dangers and disadvantages of self representation. He was able to answer that these are general intent crimes, and as to what needs to be proven. As to the legal defenses, his answer is satisfactory." Although appellant mentioned his federal agent status as a defense during the hearing, he also maintained: "I was assaulted. I'm notifying the court that I was assaulted which, you know, I did defend myself." Appellant also mentioned his belief that he was being framed. Self-defense and being framed are legitimate defense theories which are often raised in criminal trials. Nothing that occurred at the hearing constituted new evidence or a change of circumstances calling the competency finding into question.

At the probation revocation hearing, appellant did refer to his federal agent status and did argue that his records were sealed as defenses to the probation violation. However, he also attempted to show that he was attacked by Officer Harrell while attempting to talk to the arresting officer, and also to show that a number of officers used excessive force on him. Further, there were two videotapes of the arrest, and appellant questioned Officer Harrell about the tapes to show that those tapes did not contain images of appellant hitting Officer Harrell. The facts of appellant's probation violation were straightforward, and it is difficult to see how any defendant could have mounted an effective defense to the violation charge.

Appellant's reliance on *People v. Murdoch* (2011) 194 Cal.App.4th 230 is misplaced. In that case, even though the defendant was found competent several months before trial, the Court of Appeal found that the trial court should have declared a doubt as to defendant's competency once trial started. "In finding defendant competent to stand trial, [the psychologist] stated in reference to the charged incident, defendant 'has an explanation for his behavior that is rational.'" (*Id.* at p. 238.) Just before opening statements, the defendant told the court that his defense was that the victim and the witness were not human. When the court told the defendant that he could ask the two individuals about their criminal records, defendant replied that "shoulder blades are symbolic of angelic beings," angels do not have shoulder blades and cannot shrug, and all defendant needed to do was show that the two individuals could not shrug. (*Id.* at p.

9

234.)  During trial, the only question defendant asked the victim was if he could shrug his shoulders.  The victim shrugged his shoulders.  Defendant asked no further questions of him, and did not ask any questions of the other witness.  (*Id*. at p. 235.)  Thus, the defendant had changed his defense by the time trial started, from a rational to an irrational one.   He did not present a rational defense.  Thus, there was a change of circumstances since the defendant was found competent.

This case is different in two key respects from *Murdoch, supra*.  First, appellant's behavior at the probation hearing was comparable to his behavior since being found competent, and did not represent a change in circumstances.  Second, appellant did present a rational defense to the probation violation charge.  Thus, the reasoning of *Murdoch* does not assist appellant.

It is clear that some defendants may be mentally ill but at the same time understand the nature of the proceedings against them and be able to assist in their own defense.  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1064.)  That was the case here.


Disposition

The trial court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ARMSTRONG, J.


We concur:



TURNER, P. J.                    MOSK, J.




10